*Kenneth E. Cosgrove, et al. v. Comptroller of Maryland*, No. 1030, September Term 2023.
Opinion by Getty, Joseph M., J.

**HEADNOTES:**

**TAX-GENERAL – MARYLAND TAX COURT – JURISDICTION**

The Maryland Tax Court is an administrative agency with quasi-judicial functions.  Tax
Court procedures are similar to the procedures in an Article IV court of general jurisdiction,
but the Tax Court is not a court of general jurisdiction and cannot exercise judicial
functions.  The Tax Court may only exercise the powers which have been granted to it by
the legislature and may not expand its own jurisdiction.  These powers do not include the
power to hear moot cases and issue advisory opinions.

**TAX-GENERAL – INCOME TAX – FOREIGN EARNED INCOME**

Section 10-204 of the Tax-General Article of the Maryland Code (1988, 2022 Repl. Vol.)
provides that certain income excluded from federal adjusted gross income must be added
back on state tax returns to determine Maryland adjusted gross income.  Subsection (c)
states this includes salary, wages, or other compensation for personal services.  The Section
does not make clear whether Maryland taxpayers need to add back foreign earned income
or if they may exclude foreign earned income from their state tax returns pursuant to the
Federal Foreign Earned Income Exclusion.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1030

September Term, 2023

_____

KENNETH E. COSGROVE, ET AL.

v.

COMPTROLLER OF MARYLAND

_____

Zic,
Kehoe, S.,
Getty, Joseph M.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Getty, J.
_____

Filed: August 29, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Are Maryland residents who work abroad with foreign earned income, and who receive an exemption from federal tax laws, required to add back the foreign earned income to their federal adjusted gross income on their Maryland tax return and thus pay state and local income tax on their foreign earned income?

That was the question at the heart of this case before the Maryland Tax Court when the taxpayers, Appellants Kenneth Cosgrove and Lucy Reddaway (hereinafter "the Cosgroves"), filed an amended state tax return excluding income earned in the United Kingdom and claiming a tax refund for two years.

The Cosgroves jointly filed federal tax returns and excluded income from their federal adjusted gross income pursuant to the Foreign Earned Income Exclusion ("FEIE"). The FEIE is a federal law that allows a qualified United States citizen or resident living abroad to exclude earned income received for services performed within a foreign country from that individual's gross income, thereby exempting the income from federal taxes. 26 U.S.C. § 911. A taxpayer qualifies for the FEIE if the taxpayer is an individual "whose tax home is in a foreign country" and is either "a citizen of the United States and establishes . . . that [the taxpayer] has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year" or is "a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period." *Id.* § 911(d).

Originally, the Cosgroves did not exclude income under the FEIE on their joint state tax returns, but subsequently filed an amended state tax return excluding income earned in the United Kingdom and claiming a tax refund for two years.

Initially, the Comptroller denied their claim but then, prior to the hearing before the Tax Court and without explanation, the Comptroller issued a refund with interest on the taxes paid on the foreign earned income. The Comptroller then filed a motion to dismiss for lack of subject-matter jurisdiction. The Tax Court granted the motion to dismiss as the case was now moot and determined the Tax Court does not have the jurisdiction to hear a moot case or to issue an advisory opinion. The parties appealed the Tax Court's ruling to the Circuit Court for Anne Arundel County, which affirmed the decision.

Ultimately, the question before this Court is:

Does the Tax Court have the jurisdiction to hear the merits of a moot case?[1]

## BACKGROUND

As noted in the parties' briefs and in the Tax Court's Memorandum, the underlying facts of this case are not in dispute. The Cosgroves are United States citizens and Maryland taxpayers. In 2014 and 2015, they lived and worked in the United Kingdom. The Cosgroves qualified under the statute and excluded income they earned in the United

---

[1] The Cosgroves state the question presented as:

> Whether Appellee's unilateral refund of tax due after the Appellants and Appellee fully briefed the legal issues through cross-motions for summary judgment in the Tax Court and prior to the Tax Court rendering a decision moots the controversy and removes the Tax Court's jurisdiction under Tax-Gen. § 3-103 to issue a decision.

Kingdom from their federal adjusted gross income, pursuant to the FEIE,[2] on their jointly filed 2014 and 2015 federal income tax returns. When computing their Maryland adjusted gross income, the Cosgroves included all income earned in the United Kingdom on their jointly filed Maryland tax returns for the same period. In April and July of 2018, the Cosgroves filed amended state tax returns for 2014 and 2015. On each amended return, the Cosgroves recalculated their adjusted gross income, this time excluding income earned in the United Kingdom pursuant to the FEIE. They claimed refunds for approximately $4,000 for 2014 and approximately $6,000 for 2015, which the Comptroller ultimately denied.

The Cosgroves subsequently filed an administrative appeal. The Comptroller held an informal hearing and issued a Notice of Final Determination denying the refund claims.

---

[2] 26 U.S.C. § 911 states, in pertinent part:

(a) **Exclusion from gross income.** At the election of a qualified individual . . . there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year—
(1) the foreign earned income of such individual

\*  \*  \*

(b) **Foreign earned income.**
(1) **Definition.** For the purposes of this section—

(A) **In general.** The term "foreign earned income" with respect to any individual means the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual during the [prescribed period].

The Notice stated that while the Cosgroves' income earned in the United Kingdom "may be exempted from the taxpayers' federal adjusted gross income, it must be added for state and local tax purposes, as Tax-General Article § 10-204[3] requires the addition of the income on a Maryland resident return." The Cosgroves appealed this decision to the Maryland Tax Court.

*The Tax Court's Decision*

On appeal to the Tax Court, the parties agreed to forego discovery, stipulated to the facts, and submitted the case on cross-motions for summary judgment. After each side filed their respective motions, oppositions, and replies, the Comptroller, prior to the hearing before the Tax Court and without explanation, changed course and refunded the requested amounts with interest. The Comptroller then moved to dismiss the appeal to the Tax Court for lack of subject-matter jurisdiction, which the Cosgroves opposed. The Tax Court issued a Memorandum and Order granting the Comptroller's Motion to Dismiss after finding it did not have jurisdiction to hear a moot case.

---

[3] Section 10-204 of the Tax General Article, Maryland Code states, in relevant part:

> (a) To the extent excluded from federal adjusted gross income, the amounts under this section are added to the federal adjusted gross income of a resident to determine Maryland adjusted gross income.

>              *      *      *

> (c)(1) If exempted by federal law or by treaty from federal but not State tax on income, the addition under subsection (a) of this section includes salary, wages, or other compensation for personal services.

In the Memorandum, the Tax Court stated the issue presented as "whether [the Tax Court] has jurisdiction over a matter that the parties have resolved," as the Cosgroves "now seek[] the Court to issue a ruling on the central issue of the appeal for the benefit of similarly situated taxpayers in the future." The Memorandum began by discussing the Tax Court's status as an administrative agency:

> While functioning like a court in many respects, the Tax Court is an adjudicatory administrative agency. Although the Tax Court has the authority to conduct proceedings in a manner similarly to a proceeding in a court of general jurisdiction, that authority does not enlarge the special, limited, statutory jurisdiction of the court into the broad general jurisdiction of a court of equity.

The court then cited the statutes conferring jurisdiction on it:

> The Tax Court has jurisdiction to hear appeals from the final determination of the Comptroller for, among others, the determination of a claim for refund. Tax-General §§ 3-103(a)(4) and 13-510(a)(6). The powers of the Tax Court include hearing, trying, determining, or remanding any matter before it. Tax-General § 13-528(a)(1). "In exercising these powers, the Tax Court may reassess or reclassify, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed to the Tax Court." Tax-General § 13-528(a)(2).

The Cosgroves argued that the Tax Court has broad power "to resolve questions of tax law as would a court of general jurisdiction," and that the court retains jurisdiction to issue an advisory opinion even though the case has been resolved. The court however, determined that:

> the Legislature granted the Tax Court a special, limited jurisdiction, not the general jurisdiction of other State courts. Tax Court jurisdiction can do no more than make factual determinations and adjudicate disputes in a case where a controversy exists. Because the Tax Court's jurisdiction ends when the controversy ceases, it lacks the power to issue an advisory opinion about matters already resolved.

The Tax Court further found that even if its "jurisdiction reflected that of courts of general jurisdiction," it still did not have the power to issue advisory opinions in moot cases. The Tax Court cited to Section 13-505 of the Tax-General Article, which "prohibits a court of general jurisdiction from issuing 'an injunction, writ of mandamus, or other process against the State or any officer or employee of the State to enjoin or prevent the assessment or collection of a tax,'" and stated that even courts of general jurisdiction cannot issue an advisory opinion in a moot tax matter.

Finally, the Tax Court considered, in the event it has the power to issue advisory opinions, whether the two exceptions to the mootness doctrine apply to allow it to do so in this case. The Tax Court first analyzed whether the first exception to mootness, "capable of repetition, yet evading review," applied. The court stated that this exception does not apply "unless (1) the challenged action is 'too short in its duration to be fully litigated prior to its cessation or expiration;' and (2) there is a 'reasonable expectation' that the same party will be subjected to the same action again. *State v. Parker*, 334 Md. 576, 585 [(1994)]." The Tax Court found that the Cosgroves did not have a reasonable expectation that they "will be subjected to an assessment for foreign earned income for later years," and the fact that the Comptroller issued them refunds "shows there is a 'reasonable likelihood' that the Comptroller will *not* assess for foreign earned income in other years."

Next, the Tax Court assessed whether the second exception to mootness, the public interest exception, applied. The Tax Court stated that this exception "applies when 'the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest.'" The Tax Court cited *Lloyd v. Bd. of Supervisors of Elections*

*of Balt. Cnty.*, 206 Md. 36, 43 (1954), and the four factors a court should consider when determining whether the public interest exception applies:

> [1] If the public interest clearly will be hurt if the question is not immediately decided, [2] if the matter involved is likely to recur frequently, and [3] its recurrence will involve a relationship between government and its citizens, or a duty of government, and [4] upon any recurrence, the same difficulty which prevented the appeal at hand from being h[e]ard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors occur with sufficient weight.

The Tax Court determined that factors one, two, and four are not at issue in this case, and therefore the public interest exception does not apply. The Tax Court then granted the Comptroller's motion to dismiss, as the court found it "lacks authority to issue an advisory opinion." The Cosgroves petitioned the Circuit Court for Anne Arundel County for judicial review, which affirmed the Tax Court's decision by a written one-page order. The Cosgroves timely appealed to this Court.

### STANDARD OF REVIEW

The Tax Court is an administrative agency within the executive branch of state government. *Comptroller v. FC-GEN Operations Invs. LLC.*, 482 Md. 343, 358 (2022) (citing *Comptroller v. Wynne*, 431 Md. 147, 160 (2013), *aff'd*, 575 U.S. 542 (2015)). As such, "[a] decision of the Tax Court is subject to the same standards of judicial review as contested cases of other administrative agencies under the State Administrative Procedures Act ("APA")." *Id.* When an appellate court reviews a decision of an administrative agency, we "look[] through the decision[] of the circuit court" and evaluate the agency's decision. *Id.* at 359.

We review an agency's decision based on both its findings of fact and conclusions of law. An agency's factual findings and inferences drawn therefrom are reviewed under the substantial evidence standard. *Id.* Under the substantial evidence standard, "the court defers to the facts found and inferences drawn by the agency when the record supports those findings and inferences." *In re Featherfall Restoration LLC*, 261 Md. App. 105, 128 (2024), *cert. granted*, No. 67, Sept. Term, 2024, 2024 WL 3330317 (Md. June 17, 2024) (quoting *Md. Dep't of the Environment v. Cnty. Comm'rs of Carroll County*, 465 Md. 169, 201 (2019)). "The reviewing court considers whether a reasoning mind reasonably could have reached the factual conclusion reached by the agency." *Id.* (internal citations omitted).

An agency's decision is also reviewed for errors of law. *FC-GEN Operations Invs.*, 482 Md. at 360. Unlike an agency's findings of fact, its conclusions of law are reviewed de novo for correctness. *Id.*

"The phrase 'errors of law' encompasses a variety of legal challenges." *Id.* These types of challenges include: "(1) the constitutionality of an agency's decision; (2) whether the agency had jurisdiction to consider the matter; (3) whether the agency correctly interpreted and applied applicable case law; (4) and whether the agency correctly interpreted an applicable statute or regulation." *Id.* Courts do not apply any agency deference when reviewing the first three types of legal challenges, but "occasionally apply agency deference when reviewing errors of law related to the fourth category." *Id. See also Featherfall*, 261 Md. App. at 129 (stating that "[a]n agency's interpretation of a statute

it administers, or regulations promulgated under such a statute, typically does receive a degree of deference.").

When we review a legal challenge to an agency's interpretation of a statute it administers, we must determine how much weight to give the agency's interpretation. *Md. Dep't of the Environment v. Assateague Coastal Trust*, 484 Md. 399, 451 (2023). The Court applies a "sliding-scale approach," in which the weight given to the agency's interpretation depends on a number of factors. *Id.*; *In re Md. Off. of People's Couns.*, 486 Md. 408, 441 (2024). "We give more weight when the interpretation resulted from a process of reasoned elaboration by the agency, when the agency has applied that interpretation consistently over time, or when the interpretation is the product of contested adversarial proceedings or formal rule making." *Assateague Coastal Trust*, 484 Md. at 451–52 (quoting *FC-GEN Operations Invs.*, 482 Md. at 363).

## DISCUSSION

### A. The Parties' Contentions

On appeal, the Cosgroves argue that (1) the Tax Court has the jurisdiction and discretion to resolve questions of law in a moot case and (2) this case falls under the exceptions to the mootness doctrine.

The Cosgroves begin by acknowledging the Tax Court's status as a quasi-judicial agency. They contend that this quasi-judicial status does not so severely limit the Tax Court's jurisdiction such that it cannot hear "moot cases in certain circumstances."

The Cosgroves rely on Sections 3-103(a),[4] 13-523,[5] 13-525,[6] and 13-528(a)(1)–(2),[7] to assert that the Tax Court has "significant authority and discretion" and is "broadly

[4] Section 3-103(a) of the Tax-General Article, Maryland Code states:

(a) The Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any tax issue, including:

(1) the valuation, assessment, or classification of property;
(2) the imposition of a tax;
(3) the determination of a claim for refund;
(4) the application for an abatement, reduction, or revision of any assessment or tax; or
(5) the application for an exemption from any assessment or tax.

[5] Section 13-523 of the Tax-General Article, Maryland Code states that "[a]n appeal before the Tax Court shall be heard de novo and conducted in a manner similar to a proceeding in a court of general jurisdiction sitting without a jury."

[6] Section 13-525 of the Tax-General Article, Maryland Code states:

(a) A party may submit to the Tax Court a request for a ruling on a question of law that is material to the appeal.

(b) On a request submitted under subsection (a) of this section, the Tax Court may:

(1) issue a ruling on the question of law;
(2) modify the question submitted by a party and issue a ruling on the modified question; or
(3) decline to issue a ruling.

[7] Section 13-528(a)(1)–(2) of the Tax-General Article, Maryland Code states:

(a)(1) The Tax Court shall have full power to hear, try, determine, or remand any matter before it.

(continued)

empowered to resolve questions of tax law as would a court of general jurisdiction." These powers, the Cosgroves argue, give the Tax Court jurisdiction to issue an opinion in a moot case as there is "no statutory basis for depriving it of jurisdiction to issue decisions in moot cases" and no "requirement that the matters before it involve live controversies."

Next, the Cosgroves maintain that this case falls under the exceptions to the mootness doctrine and therefore, since the Tax Court has the power to hear moot cases, the court should have exercised its discretion to hear this case. The Cosgroves cite to *State v. Parker*, 334 Md. 576 (1994), which articulates the first exception to the mootness doctrine: where the case is capable of repetition yet evading review. Under this exception, a case will not be considered moot if "(1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 585.

The Cosgroves contend that the facts of this case fall under this exception because the legal issue of whether the FEIE applies in Maryland has not been decided. The Tax Court's failure to issue a decision on this matter "exposes other Maryland taxpayers to incorrect and unconstitutional assessments of amounts." Furthermore, the Cosgroves reason, if the State "can avoid an adverse decision simply by abating assessments or issuing

_____

(continued)

> (2) In exercising these powers, the Tax Court may reassess or reclassify, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed to the Tax Court.

refunds" after the case is fully briefed, "the issue will forever evade review" and harm Maryland taxpayers.

The Cosgroves next cite to *Lloyd v. Board of Supervisors of Elections of Baltimore County*, 206 Md. 36 (1954), which articulates the second exception to the mootness doctrine: the public interest exception. *Lloyd* lists four factors courts look to when considering this exception: (1) "if the public interest clearly will be hurt if the question is not immediately decided;" (2) "if the matter involved is likely to recur frequently;" (3) if "its recurrence will involve a relationship between government and its citizens, or a duty of government;" and (4) if "upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision." *Id.* at 43.

The Cosgroves contend all four factors of the public interest exception to the mootness doctrine are met. First, the Cosgroves claim that Maryland taxpayers do not have clear guidance on whether they may claim the FEIE on their state tax returns. Therefore, other taxpayers face the same issue as the Cosgroves: "forego the exclusion and overpay their Maryland income tax, or claim the exclusion and incur expensive and time-consuming audits and administrative appeals."

The Cosgroves next argue the second factor is met because the Comptroller may "moot the case again and again" and evade judicial review. Furthermore, without a decision on the merits, the Comptroller will continue to assess an income tax that is unconstitutional on thousands of Maryland taxpayers.

At oral argument, the Cosgroves argued that a state tax on foreign earned income violates the Commerce Clause and is therefore preempted by federal law. While this issue

is not the subject of this opinion, we do note that other states do not allow taxpayers to claim the Foreign Earned Income Exclusion for state income tax returns. *See Steiner v. Utah State Tax Comm'n*, 449 P.3d 189, 193, 200 (Utah 2019), *cert. denied*, 140 S. Ct. 1114 (2020) (upholding Utah's tax on foreign earned income); Haw. Rev. St. § 235-2.3(b)(35) (2021 Supp.) (stating that Section 911 of the United States Internal Revenue Code is not "operative for the purposes of this chapter."); Haw. Rev. St. § 235-55(b) (explaining that a resident is not allowed to claim a tax credit for any taxable income which may be excluded under subchapter N of chapter 1 of the Internal Revenue Code); Hawaii Resident Income Tax Instructions Form N-11 12 (2023) (instructing that if you worked outside of the United States while a Hawaii resident and you excluded foreign earned income on your federal tax return, "you need to add back the amounts here because Hawaii does not have this exclusion.").

Both parties agree the third factor is satisfied as the assessment of taxes involves a relationship between government and its citizens. Finally, the Cosgroves contend that the fourth factor is satisfied because the Tax Court's order allows the Comptroller to "avoid unfavorable decisions by simply withdrawing proposed assessments or issuing refunds shortly before the Tax Court rules in favor of the taxpayer."

In its brief, the Comptroller rejects the Cosgroves' assertion that the Tax Court has the power to hear a moot case. The Comptroller argues that since the Tax Court's jurisdiction is limited to controversies, the Tax Court does not have the power to issue

advisory opinions after the controversy concludes.[8]  Even if the Tax Court did have the jurisdiction to hear a moot case, the Comptroller maintains, none of the exceptions to the mootness doctrine apply in this instance.  Finally, the Comptroller contends that the scope of review of the Tax Court is narrow and this Court "should give great weight to the Tax Court's legal conclusion" as it interpreted its own jurisdictional statutes, addressed the parties' arguments, and "applied a sound reasoning process."

## B.  History of the Maryland Tax Court

The Tax Court was created in its current form in 1959[9] as an administrative body with quasi-judicial functions.[10] 1959 Md. Laws Ch. 757; *Shell Oil Co. v. Supervisor of Assessments of Prince George's Cnty.*, 276 Md. 36, 47 (1975).  "Despite its name, the Tax Court is not a court; instead, it is an adjudicatory administrative agency in the executive branch of state government."  *FC-GEN Operations Invs.*, 482 Md. at 365 (quoting *Furnitureland S., Inc. v. Comptroller*, 364 Md. 126, 137 n.8 (2001)).

---

[8] The Comptroller also relies on Section 13-505 of the Tax-General Article to argue that a court of general jurisdiction cannot issue advisory opinions for a tax case. Section 13-505 prohibits a court from issuing "an injunction, writ of mandamus, or other process against the State or any officer or employee of the State to enjoin or prevent the assessment or collection of a tax []."

[9] For a more detailed history of the Maryland Tax Court see *Comptroller v. FC-GEN Operations Invs. LLC*, 482 Md. 343 (2022).

[10] The main purpose of creating the Maryland Tax Court was to "separate the 'quasi-judicial' functions of the State Tax Commission from its 'administrative' functions." *Montgomery Cnty. Council v. Supervisor of Assessments of Montgomery Cnty.*, 275 Md. 339, 347 (1975).

The Court consists of five judges,[11] appointed by the Governor, who have

jurisdiction to "hear appeals of the final decisions relating to tax issues." *Id.*; Md. Code,

Tax-Gen. ("TG") §§ 3-103, 3-106 (1988, 2022 Repl. Vol.).

The jurisdiction of the Tax Court is outlined in Section 3-103 of the Tax-General

Article:

> (a) The Tax Court has jurisdiction to hear appeals from the final decision,
> final determination, or final order of a property tax assessment appeal board
> or any other unit of the State government or of a political subdivision of the
> State that is authorized to make the final decision or determination or issue
> the final order about any tax issue, including:
>
> > (1) the valuation, assessment, or classification of property;
> > (2) the imposition of a tax;
> > (3) the determination of a claim for refund;
> > (4) the application for an abatement, reduction, or revision of any
> > assessment or tax; or
> > (5) the application for an exemption from any assessment or tax.

Prior Supreme Court of Maryland cases have interpreted the Tax Court's

jurisdiction. In *Shell Oil*, the Supreme Court found that statutory amendments providing

for a direct right of appeal from the Tax Court to either the Appellate Court or Supreme

Court were unconstitutional. *Shell Oil*, 276 Md. at 40. The Supreme Court rejected the

notion that the Tax Court was performing judicial functions and determined that an attempt

---

[11] Of the five judges, the Chief Judge and at least one other judge "shall be members of the Bar of the State." TG § 3-106. Additionally, the statute requires geographic and political diversity: at least one judge needs to be a resident of Baltimore City; at least one judge needs to be a resident of the Eastern Shore; at least one judge needs to be a resident of the Western Shore; and no more than three judges can be from the same political party. *Id.*

-15-

to do so would be a violation of separation of powers under Article 8 of the Maryland Declaration of Rights[12] and Article IV of the Constitution.[13]  *Id.* at 47.

In order to perform the duties that have been delegated by the legislature, the Tax Court is required to "make factual determinations and adjudicate disputes." *Id.*  Therefore, the Court found that the legislature granted the Tax Court quasi-judicial powers as an administrative agency but did not delegate "judicial function or judicial authority" to the Tax Court.  *Id.*  After this decision, the "Legislature amended the statute to provide a right of appeal of a final decision of the Tax Court to the circuit court and that the review is to be undertaken within the judicial review provisions of the APA."  *FC-GEN Operations Invs.*, 482 Md. at 370.

In *FC-GEN Operations Investments*, the Court provided a detailed history of the Tax Court and how it has evolved into its present form.  *Id.* at 365–72.  The Supreme Court agreed with a concurring opinion from this Court that "[a]t some point, [] courts stopped deferring to the Comptroller and began deferring, instead, to the legal determinations of

---

[12] Article 8 of the Maryland Declaration of Rights states:

> That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

[13] Section 1, Article IV of the Maryland Constitution states:

> The Judicial power of this State is vested in a Supreme Court of Maryland, such intermediate courts of appeal as the General Assembly may create by law, Circuit Courts, Orphans' Courts, and a District Court.  These Courts shall be Courts of Record, and each shall have a seal to be used in the authentication of all process issuing from it.

the Maryland Tax Court." *Id.* at 377 (quoting *Comptroller v. FC-GEN Operations Invs. LLC*, No. 0946, Sept. Term, 2020, 2022 WL 325940, at *8 (Friedman, J., concurring)). Ultimately, the Court found,

> where a reviewing court applies agency deference to legal interpretations of a tax statute when undertaking judicial review of a Tax Court decision, the court may give appropriate deference to the Comptroller's interpretation of a tax statute—not the Tax Court's interpretation—*to the extent the interpretation is premised upon a statute that the Comptroller administers and the regulations promulgated for that purpose.* The deference owed to an agency's interpretation of a statute, however, is always tempered by the judicial branch's constitutional duty to interpret the law.

*Id.* at 378 (emphasis added).

Thus, judicial deference is typically given to the Comptroller's interpretation of a tax statute and not to the Tax Court.

### C. The Tax Court's Jurisdiction

The Tax Court's name is misleading. As discussed *supra*, the Tax Court is an administrative agency with quasi-judicial functions and is subject to the APA. *Id.* at 358, 370, 378. Administrative agencies derive their authority from the legislative branch, and only have those powers which the legislature has either "expressly or impliedly conferred." *Northwest Land Corp. v. Md. Dep't of Environment*, 104 Md. App. 471, 502 (1995) (citing *Mayor & Aldermen of the City of Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 394 (1979)). Even though the legislature has granted the Tax Court certain powers similar to a court of general jurisdiction,[14] the Tax Court is not, and the legislature did not intend

---

[14] Sections 13-514 to 13-529 of the Tax-General Article govern proceedings in the Tax

(continued)

-17-

to make it, a court of general jurisdiction. *See Shell Oil*, 276 Md. at 47 (stating that the legislature did not impose judicial functions on the Tax Court as only courts enumerated in Article IV of the Maryland Constitution can exercise judicial power).

Administrative agencies take on "a judicial coloring" in that "they are called upon to make factual determinations and thus adjudicate, and it is in that sense that they are also recurrently considered to be acting in a quasi-judicial capacity." *Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 222 (1975). "However, this authority is not the same and, therefore, is distinguishable from the exercising of the 'judicial powers' of this State, which power by Section 1, Article IV of the Maryland Constitution is reserved exclusively to designated courts." *Id.*

While the Cosgroves recognize that the Tax Court is not a court of general jurisdiction, they argue that the Tax Court's jurisdiction is not so limited that it cannot hear moot cases in "certain circumstances." They rely on various sections of the Tax-General Article to assert that the "Tax Court is broadly empowered to resolve questions of tax law as would a court of general jurisdiction." Furthermore, they claim that there is "no statutory basis for depriving [the Tax Court] of jurisdiction to issue decisions in moot cases."

The Cosgroves cited to *SYL, Inc. v. Comptroller of the Treasury*, No. C-96-0154-01, 1999 WL 322666 (Md. Tax Apr. 26, 1999), in their brief and at oral argument in support

---

(continued)

Court. These sections provide a party with the procedural rights to a prompt hearing, to appear before the Tax Court *pro se* or with counsel, to introduce evidence, subpoena witnesses and conduct depositions, and submit certain issues of fact to a jury. TG §§ 13-514 to 13-529.

-18-

of their assertion that the Tax Court has the power to hear and issue an opinion in a moot case. The main issue in *SYL, Inc.* was whether the State has the power to tax the income of an out-of-state affiliate of a Maryland corporation. The Tax Court first found that the company's lack of in-state activity precluded the imposition of the income tax. *Id.* at *5. The court then stated, "[h]aving found that the requisite nexus to warrant the imposition of income tax on Petitioner does not exist, the issue of whether a regulation had to [be] promulgated becomes moot. However, due to the number of taxpayers involved and the likelihood of judicial review, we shall address the issue." *Id.* at *6.

While the Cosgroves are correct that the Tax Court addressed a moot question in *SYL, Inc.*, the procedural posture in which the moot question was decided is markedly different than the case at bar. The Tax Court held "hearings, testimony was taken, documents were presented, and subsequently, memorandum were filed." *Id.* at *1. There was a live controversy in the case that the court decided. It continued to decide an issue that was raised but only became moot by the Tax Court's answer to the first question in the written opinion.

In contrast, the Cosgroves' matter was fully briefed, but was mooted before a hearing took place. The parties did not have the opportunity to present testimony or documents as the petitioners in *SYL, Inc.* did. Finally, there was no longer a matter in controversy that the Tax Court could decide in this case. While the Tax Court has the power, under Section 13-528 of the Tax-General Article, to act in a quasi-judicial capacity when there is a matter before it, the legislature has not explicitly or impliedly granted the Tax Court the power to act when no live controversy is present. Administrative agencies,

-19-

such as the Tax Court, only have the power which the legislature has granted them and cannot expand their own jurisdiction. *Northwest Land Corp.*, 104 Md. App at 502.

Furthermore, in its Memorandum, the Tax Court interpreted the statutes which confer jurisdiction on it and determined that it lacks the power to issue an advisory opinion in a moot case. While the Supreme Court held in *FC-GEN Operations Investments* that deference is typically given to the Comptroller's interpretation of tax statutes, in this case, the Tax Court is not interpreting a tax statute but its own jurisdictional statutes. 482 Md. at 378. We therefore give administrative deference to the Tax Court's interpretation and decision that it does not have the power to hear and decide moot cases. As such, we agree that the Tax Court did not have jurisdiction over the substance of the Cosgroves' appeal, since the matter became moot before the court could hear the administrative appeal.

### D. Statutory Uncertainty Regarding State Taxation of Foreign Earned Income

The underlying issue in this case concerns the Maryland statutes controlling foreign earned income. In response to the Cosgroves' administrative appeal, the Comptroller found that this income must be added back to the federal adjusted gross income for state purposes, but, before the Tax Court hearing, issued a refund to the Cosgroves without explanation. We are concerned that the legislative history for similar tax legislation indicates that the General Assembly interprets the application of the FEIE differently. Because the case became moot by the actions of the Comptroller before the Tax Court, this issue is not before our Court in this appeal, but we offer this note about the uncertainty of the statute in the event the General Assembly wishes to address this issue as a matter of fairness to Maryland taxpayers.

In their briefs, the Cosgroves raised concerns about the language of Section 10-204 of the Tax-General Article and application of the FEIE in Maryland. Section 10-204 states, in relevant part:

> (a) To the extent excluded from federal adjusted gross income, the amounts under this section are added to the federal adjusted gross income of a resident to determine Maryland adjusted gross income.

> \* \* \*

> (c)(1) If exempted by federal law or by treaty from federal but not State tax on income, the addition under subsection (a) of this section includes salary, wages, or other compensation for personal services.

There is uncertainty surrounding Section 10-204, and the Cosgroves contend "there is little Maryland legislative history and no administrative guidance from [the Comptroller] on the application of the FEIE." Further, because the Comptroller maintained that the Cosgroves' foreign earned income needed to be added back for State taxes but then, for unexplained reasons, issued the tax refunds, "Maryland taxpayers have no clear guidance on the scope of the [Section 10-204(c)] addback with respect to foreign earned income."

The confusion surrounding whether or not the FEIE applies in Maryland is further demonstrated by the following excerpt from the Comptroller's Notice of Final Determination: "[The Cosgroves' accountant] stated that she had never had a problem with filing Maryland returns for other clients that excluded foreign earned income."

According to the Cosgroves, the Comptroller's refusal to concede that the FEIE applies in Maryland "leaves Maryland taxpayers in the same dilemma as Appellants: forego the exclusion and overpay their Maryland income tax, or claim the exclusion and incur expensive and time-consuming audits and administrative appeals."

The uncertainty about whether Marylanders may claim the FEIE on their state taxes is not limited to taxpayers; it seems as though the General Assembly is unsure about its application as well. In the Comptroller's Notice of Final Determination, the Comptroller found that "[w]hile the income earned from the United Kingdom may be exempted from the taxpayers' federal adjusted gross income, it must be added for state and local tax purposes, as Tax-General Article § 10-204 requires the addition of the income on a Maryland resident return."

However, recent legislative history suggests that the General Assembly believes Maryland taxpayers are already exempt from paying state taxes on foreign earned income. In 2006, House Bill 994 was introduced purportedly to grant government employees working abroad tax benefits similar to the federal exemption for non-government employees with foreign earned income. The Fiscal and Policy Note for House Bill 994,[15] stated the following about the current law:

> Under federal law, a U.S. citizen or resident alien living and working abroad may qualify *to exclude all or part of his or her foreign earned income from federal adjusted gross income (FAGI)*. The FAGI of a taxpayer is the starting point for determining Maryland State income tax liability. Unless required by any provision of State law, *any amount excluded from FAGI will not be taxable for State income tax purposes*. Foreign earned income is defined as pay, such as wages, salaries, and professional fees, for personal services performed in a foreign country during the time an individual's tax home is in another country.

---

[15] House Bill 994 from the 2006 Legislative Session enacted TG § 10-207(w), which allowed federal government employees who live and work abroad to subtract up to $3,500 from their federal adjusted gross income to determine their Maryland adjusted gross income. The federal statute does not allow federal employees to make such a deduction. *See* 26 U.S.C. § 911(b)(1)(B)(ii).

Dep't of Leg. Servs., Fiscal and Policy Note, H.B. 994, at 2, 2006 Leg., 421st Sess. (Md. 2006), *in* Bill File to H.B. 994, 2006 Leg., 421st Sess. (Md. 2006) (hereinafter "2006 H.B. 994 Bill File") (emphasis added).  *See also* House Ways & Means Comm., Floor Report, at 1 (2006), *in* 2006 H.B. 994 Bill File; Senate Budget & Tax'n Comm., Floor Report, at 1 (2006), *in* 2006 H.B. 994 Bill File.

This belief that the federal statute controlled, and that foreign earned income is not subject to state and local income tax was stated even more clearly in the floor report for House Bill 994 and Senate Bill 557[16] presented by the Senate Budget and Taxation Committee on the Senate floor:

> Under current federal law, *the foreign earned income of individuals who meet the same requirements*[17] *and work for private employers is not subject to tax and this exemption flows through to Maryland*.  Unfortunately, these federal exclusions for foreign earned income and foreign housing costs are not applicable to income or housing costs that are paid or provided by the U.S. government to its employees. Senate Bill 557/HB 994 are a modest attempt at making the treatment of employees of the U.S. government in a similar manner as those who work for private employers.

---

[16] Senate Bill 557 was the cross-file of House Bill 994.  It passed both chambers and was presented to the Governor but received a "duplicative" veto because both bills were identical, and the Governor chose to sign only one bill.  When two cross-filed bills pass in both the House of Delegates and the Senate, the Governor has the "choice to sign only one bill or both." *Logan, Trustee Under Harold A. Logan Trust Agreement Dated April 30, 2007 v. Dietz*, 258 Md. App. 629, 678 n.14 (2023).  "Traditionally, it has been good legislative practice to only sign one bill." *Id.*

[17] The floor report indicates that the requirements to exclude foreign earned income from Maryland taxes are the same as those under the federal statute: either the individual was out of the United States for the entire taxable year, or the individual was out of the United States for 330 days out of any 12-month period.

Senate Budget & Tax'n Comm., Floor Report, at 1 (2006), *in* 2006 H.B. 994 Bill File (emphasis added).

Maryland appellate courts "provide[] judicial deference to the policy decisions enacted into law by the General Assembly." *Logan, Trustee Under Harold A. Logan Trust Agreement Dated April 30, 2007 v. Dietz*, 258 Md. App. 629, 687 (2023) (citing *Johnson v. State*, 467 Md. 362, 371 (2020)). Maryland taxpayers deserve fairness in tax policy and the statutes controlling foreign earned income should be clear and easy to understand. Currently, that is not the case and taxpayers are subject to the interpretation of the statute by the Comptroller, which may or may not be the policy established by the General Assembly. *See Moore v. RealPage Util. Mgmt., Inc.*, 476 Md. 501, 531–32 (2021) (citing *In re S.K.*, 466 Md. 31, 57–58 (2019)) (suggesting that if the General Assembly intended a different application of the statute then it needed to pass new legislation).

With the exception of Section 10-207(w), enacted by House Bill 994, the Tax-General Article does not specifically address how taxpayers should treat foreign earned income. Other states have explicitly stated whether taxpayers may claim a credit for foreign earned income in their tax statutes, or whether it needs to be added back for state tax purposes.

The Cosgroves have raised legitimate concerns and demonstrated that there is confusion among Maryland taxpayers about whether they may claim the Foreign Earned Income Exclusion on their Maryland tax returns. The General Assembly should examine Section 10-204 of the Tax-General Article and clarify this question for the benefit of all Marylanders who receive foreign earned income.

# CONCLUSION

We agree with the Tax Court's interpretation of its jurisdictional statute and finding that the legislature did not give it the power to hear moot cases and issue advisory opinions. The Tax Court is an administrative agency with quasi-judicial functions. While the Tax Court has powers similar to a court of general jurisdiction, it is not a court of general jurisdiction. Since the Tax Court is not a court of general jurisdiction created by the Constitution, the Tax Court cannot exercise judicial functions and only has the power the legislature has granted. The legislature has not expressly or impliedly granted the Tax Court the power to act when no live controversy is present. It therefore cannot issue advisory opinions in moot cases.

**JUDGMENT OF THE CIRCUIT COURT OF ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**